IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| IN RE: THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS TITHING LITIGATION<br><br>*This document relates to all actions.* | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO STAY DISCOVERY**<br><br>**(MDL Pretrial Order No. 4)**<br><br>Case No. 2:24-md-03102-RJS-DAO<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Daphne A. Oberg |
| --- | --- |

This consolidated, proposed class action is brought by Daniel Chappell, Masen Christensen, John Oaks, Mark Wilson, Joel Long, Brandall Brawner, Kevin Risdon, Gene Judson, and Michelle Judson (collectively, Plaintiffs) against The Church of Jesus Christ of Latter-day Saints (the Church) and one of its subsidiaries, Ensign Peak Advisors, Inc. (Ensign Peak) (collectively, Defendants). Plaintiffs, current and former Church members, allege Defendants are liable for various claims related to Defendants' use and disposition of donated funds. Defendants deny liability and have filed Motions to Dismiss.

Now before the court is Defendants' Motion to Stay Discovery pending the court's resolution of Defendants' Motions to Dismiss.[1] For the following reasons, the court GRANTS the Motion.

## BACKGROUND

In October 2023, Plaintiffs Chappell, Oaks, and Christensen filed a Proposed Class

---

[1] *See* ECF 68, *Motion to Stay Discovery Pending Resolution of Motions to Dismiss* (*Motion*). Unless otherwise stated the docket citations contained herein refer to the master docket.

Action Complaint against Defendants in this court.[2]  They alleged the Church solicited donations for charitable purposes and diverted those funds to finance an investment portfolio managed by Ensign Peak.[3]  Between December 2023 and January 2024, Plaintiffs Long, Risdon, Brawner, Gene Judson, and Michelle Judson filed similar Complaints in other district courts around the country.[4]  And in April 2024, the Judicial Panel on Multidistrict Litigation consolidated each of these cases into the present action.[5]

In May 2024, the court held a case management conference to discuss the efficient administration of the consolidated action and indicated it would order Plaintiffs to file a consolidated complaint.[6]  Defendants expressed their intent to file motions to dismiss any such complaint, and their desire to stay discovery pending the court's resolution of any motions to dismiss.  Consistent with these discussions, the court issued a Case Management Order setting a timeline for Plaintiffs to file a consolidated complaint, Defendants to file motions to dismiss, and Defendants to file a motion to stay discovery.[7]  The court temporarily stayed discovery pending its resolution of Defendants' motion to stay discovery.[8]

Plaintiffs thereafter filed a Consolidated Class Action Complaint (CCAC) asserting five causes of action arising out of Defendants' alleged conduct: (1) breach of fiduciary duty, (2)

---

[2] *See* ECF 1 (*Chappell et al. v. Corp. Pres. Church Jesus Christ Latter-Day Saints et al.*, 2:23-cv-00794-RJS-DAO (D. Utah Oct. 31, 2023)), *Proposed Class Action Complaint*.

[3] *See id.*

[4] *See* ECF 1 (*Long v. Corp. Pres. Church Jesus Christ Latter-Day Saints et al.*, 2:24-cv-00269-RJS-DAO (D. Utah Dec. 15, 2023)), *Class Action Complaint*; ECF 1 (*Risdon v. Corp. Pres. Church Jesus Christ Latter-Day Saints et al.*, 2:24-cv-00268-RJS-DAO (D. Utah Dec. 21, 2023)), *Class Action Complaint and Jury Demand*; ECF 1 (*Brawner v. Corp. Pres. Church Jesus Christ Latter-Day Saints et al.*, 2:24-cv-00277-RJS-DAO (D. Utah Dec. 22, 2023)), *Class Action Complaint*; ECF 1 (*Judson et al. v. Church Jesus Christ Latter-Day Saints et al.*, 2:24-cv-00296-RJS-DAO (D. Utah Jan. 29, 2024)), *Class Action Complaint*.

[5] *See* ECF 1, *Transfer Order*; ECF 6, *Conditional Transfer Order 1*.

[6] *See* ECF 58, *Minute Entry for May 30, 2024 Case Management Conference*.

[7] *See* ECF 60, *Initial Case Management Order*.

[8] *Id.* at 3.

fraudulent inducement, (3) fraudulent concealment, (4) fraudulent misrepresentation, and (5) unjust enrichment.[9]  Defendants filed individual Motions to Dismiss the CCAC and a joint Motion to Strike Class Allegations.[10]  The Motions to Dismiss raise several threshold issues: the Church Autonomy Doctrine, a First-Amendment based legal defense barring civil court review of internal church disputes "involving matters of faith, doctrine, church governance, and polity"; a statute of limitations defense; and the sufficiency of Plaintiffs' pleading.  Defendants also filed the present Motion to Stay Discovery.[11]  The Motion to Stay Discovery is fully briefed and ripe for review.[12]

## ANALYSIS

Citing Federal Rule of Civil Procedure 26 and the court's "broad authority" to manage discovery, Defendants' Motion asserts three reasons the court should stay discovery.[13]  First and foremost, Defendants argue the court must stay discovery because the Church's Motion to Dismiss raises the Church Autonomy Doctrine.[14]  Defendants analogize the Church Autonomy Doctrine to the Qualified Immunity Doctrine and insist the court may not initiate discovery until it decides whether the First Amendment precludes Plaintiffs' claims.[15]  Second, Defendants argue the court must stay discovery because the discovery process itself would "infringe on the

---

[9] ECF 63, *Consolidated Class Action Complaint* (*CCAC*) ¶¶ 146–92.  The CCAC added Plaintiff Mark Wilson as a party.  *See id.* ¶¶ 25–26.

[10] *See* ECF 79, *Motion to Dismiss of the Church of Jesus Christ of Latter-Day Saints, A Utah Corporation Sole and Memorandum in Support*; ECF 80, *Motion to Dismiss of Ensign Peak Advisors, Inc. and Memorandum in Support*; ECF 81, *Defendants' Motion to Strike Class Allegations and Memorandum in Support*.

[11] *See Motion.*

[12] *See* ECF 71, *Opposition to Motion to Stay Discovery* (*Opposition*); ECF 74, *Reply in Support of Defendants' Motion to Stay Discovery* (*Reply*).

[13] *Motion* at 4–10.

[14] *Id.* at 4–7.

[15] *Id.* at 4–5 (quoting *Bryce v. Episcopal Church*, 289 F.3d 648, 655 (10th Cir. 2002)).

Church's First Amendment rights."[16]  They reason discovery "would create the 'substantial danger that the State will become entangled in essentially religious controversies.'"[17]  Third, Defendants argue routine Tenth Circuit practice weighs in favor of a discovery stay.[18] Defendants submit Plaintiffs' claims are so inadequately pled and unlikely to succeed that it would be premature for the court to allow Plaintiffs the benefit of discovery.[19]  Plaintiffs oppose Defendants' Motion in its entirety, arguing Defendants apply the wrong legal standard.[20]  They contend the court may not stay discovery because Defendants failed to make a "strong showing of necessity," supported by a clear case of hardship or inequity.[21]  The court, evaluating Defendants' third argument, agrees a temporary discovery stay is prudent and grants Defendants' Motion on that ground.[22]

The Federal Rules of Civil Procedure do not provide for discovery stays as a matter of course, and Tenth Circuit precedent does not clearly establish what legal standards courts

---

[16] *Id.* at 8–9.

[17] *Id.* at 8 (quoting *Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709–10 (1976)).

[18] *Id.* at 9–10; *see also Reply* at 6–10.

[19] *Motion* at 9–10; *see also Reply* at 6–10.

[20] *Opposition* at 2–3.

[21] *Id.* at 2–3 (citing *Classic Aviation Holdings, LLC v. Harrower*, No. 2:20-cv-00824-RJS-JCB, 2021 WL 633587, at *2 (D. Utah Feb. 18, 2021)); *see also id.* at 6–7.

[22] Because the court decides Defendants' Motion by applying ordinary Tenth Circuit standards, the court does not decide the merits of Defendants' arguments that special First Amendment considerations mandate a discovery stay.

considering motions to stay discovery should apply.[23]  But Tenth Circuit precedent is clear that

the authority to stay discovery lies within the court's discretion to manage discovery and its

docket.[24]  And district courts within the Tenth Circuit routinely grant motions to stay discovery

upon consideration of the following five factors: "(1) plaintiff's interests in proceeding

expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the

burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties

---

[23] The court acknowledges district courts throughout the Tenth Circuit, including the undersigned, have articulated competing interpretations of the legal standard governing motions to stay discovery.  *Compare, e.g.*, *Classic Aviation Holdings, LLC*, 2021 WL 633587, at *2; *with In re Broiler Chicken Grower Litigation*, No. 6:17-cv-00033-RJS, 2017 WL 3841912, at *2–3 (E.D. Okla. Sept. 1, 2017) (*Chicken Growers*); *and String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:05-cv-01934-LTB-PA, 2006 WL 894955, at *2 (D. Colo. Mar. 30, 2006).

Ultimately, however, the court concludes the Tenth Circuit has not articulated a specific legal standard governing motions to stay discovery.  For example, in *Chilcott*, the Tenth Circuit held a court may not grant a motion to stay third-party proceedings unless the moving party "make[s] a strong showing of necessity."  *C.F.T.C. v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (1983) (*Chilcott*) (reviewing a court-appointed receiver's motion to stay seven distinct cases brought against a group of Ponzi scheme defendants while the receiver's action proceeded); *see also Span-Eng Assoc. v. Weidner*, 771 F.2d 464, 467–68 (10th Cir. 1985) (applying *Chilcott* to "the somewhat unusual situation in which a party to one lawsuit seeks to enjoin another party from proceeding in a related case where identical issues and parties are not present").  But the Tenth Circuit articulated no equivalent rule concerning motions to stay discovery.  Likewise, in the often-cited case *Landis*, the Supreme Court held a party seeking to stay an entire proceeding "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *see also Ben Ezra, Weinstein, & Co., Inc. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (citing *Landis* to hold a district court did not abuse its discretion by deciding not to stay a proceeding in order to allow plaintiff to conduct supplemental discovery).  But the Court's concern was the indeterminate effect of the moving party's reliance on the outcome of independent litigation: "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  *Landis*, 299 U.S. at 255.  A motion to stay discovery pending resolution of a dispositive motion presents no comparable concern.

[24] *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1386 (10th Cir. 1994) ("As a general rule, discovery rulings are within the broad discretion of the trial court."); *King v. PA Consul. Grp., Inc.*, 485 F.3d 577, 591 (10th Cir. 2007) ("District courts are properly granted broad discretion over discovery and scheduling matters; otherwise, they would be unable to effectively manage their caseloads.").  *See also Chilcott*, 713 F.2d at 1484 ("The ruling on the stay involved an exercise of discretion, and we have focused first on the question whether the appellants have carried the weighty burden of showing an abuse of discretion."); *Landis*, 299 U.S. at 254 ("The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance.").

to the civil litigation; and (5) the public interest."[25]

Here, these "guiding principles" weigh in favor of staying discovery until the court resolves Defendants' Motions to Dismiss.[26] First, "it appears that any prejudice to Plaintiffs resulting from a relatively brief discovery stay will be minimal in the context of this case and does not weigh strongly against the imposition of a stay."[27] Plaintiffs' Opposition does not specifically identify any hardship or prejudice they might experience due to a temporary discovery stay, and though the court is mindful Plaintiffs are eager to proceed with their case, a hearing on Defendants' pending Motions is scheduled for December 18, 2024.[28] The court anticipates resolving the pending Motions shortly thereafter and sees little harm in delaying discovery a matter of months.

A short delay is especially non-concerning "in view of the lengthy time this case has been percolating and will take to litigate."[29] Because the CCAC alleges complex fraud tracing back decades,[30] and Plaintiffs' proposed class consists of "millions of members,"[31] it is highly likely Plaintiffs' claims—should they survive Defendants' Motions to Dismiss—will take substantial time to litigate.[32] "In this context, a few months' delay to permit evaluation of initial Motions to

---

[25] *String Cheese Incident, LLC*, 2006 WL 894955, at *2. *See also Adv. Exterior, Inc. v. Liberty Mut. Grp., Inc.*, 568 F.Supp.3d 1144, 1146 (D. Colo. Oct. 19, 2021); *Fuller v. Salt Lake City,* No. 2:21-cv-00593-HCN-DBP, 2023 WL 3589063, at *2 (D. Utah May 22, 2023); *Martin v. SGT Inc.*, No. 2:19-CV-00289, 2019 WL 12043488, at *1 (D. Utah Aug. 21, 2019); *Mestas v. CHW Grp. Inc.*, No. CV 19-792 MV/CG, 2019 WL 5549913, at *1 (D.N.M Oct. 28, 2019); *Craig PC Sales & Servs., LLC v. CDW Gov't, LLC*, No. CIV-17-003-F, 2018 WL 4868958, at *1–2 (W.D. Okla. June 12, 2018).

[26] *Chicken Growers*, 2017 WL 3841912, at *3.

[27] *Id.* at *4.

[28] *See Initial Case Management Order* at 2.

[29] *See Chicken Growers*, 2017 WL 3841912, at *4.

[30] *See, e.g.*, *CCAC* ¶¶ 81, 87, 95, 101, 108.

[31] *See id.* ¶ 140.

[32] At this stage, the court offers no opinion on the merits of Defendants' Motions to Dismiss or Motion to Strike.

Dismiss" will result in a "comparatively small amount harm to Plaintiffs."[33]  Likewise, the court has no reason to believe a short-term discovery stay will "be the cause of lost evidence, missing witnesses, or significantly faded memories."[34]  Defendants represent that the Church is a "sophisticated organization and has put in place its long-established litigation-hold procedures."[35]

Second, proceeding with discovery would burden Defendants.  Discovery is rarely easy, and defendants are seldom eager to participate, but discovery in putative class actions involving complex issues, "wide-ranging allegations," and a lengthy history of conduct is especially demanding.[36]  Such is true of this case.  Beyond involving decades of conduct and millions of proposed class members, Plaintiffs' CCAC alleges a global religion committed fraud amounting to tens of billions of dollars.[37]  If the case proceeds to discovery, the cost and time Defendants commit to their discovery responses will be significant.

Third, a stay is convenient for the court.  The parties have so far engaged in good faith efforts to move this case toward an efficient resolution, but Defendants contend the First Amendment issues underlying the case will generate numerous, legitimate discovery disputes.[38]  From the court's perspective, it is "eminently logical" to delay exposing these disputes and

---

[33] *See Chicken Growers*, 2017 WL 3841912, at *4.

[34] *Id.*

[35] *Reply* at 8.

[36] *Chicken Growers*, 2017 WL 3841912, at *5 (describing the burdens associated with discovery in an antitrust class action); *see also Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, No. 2:19-cv-000637, 2022 WL 111126, at *2–3 (D. Utah Jan. 12, 2022) (same); *Adamson v. Volkswagen Grp. Am.*, No. 22–cv–00740–CMA–MDB, 2022 WL 4767573, at *3 (D. Colo. Oct. 3, 2022) (same).

[37] *See CCAC* ¶¶ 2, 11, 84, 85, 102, 105; *Motion* at 1 ("[T]his is certainly no ordinary class case.  It is instead a sprawling class action against a worldwide religious organization . . . filed by a handful of <u>dissenters</u> who seek approval from the Court to represent millions of <u>faithful</u> members of the Church in an effort to have the Court examine and redefine how the Church pursues its religious mission."); *Reply* at 9.

[38] *Motion* at 8–9; *Reply* at 9.

committing judicial resources to their resolution until the court has an opportunity to review and decide the threshold issues raised in Defendants' Motions to Dismiss.[39]

Fourth, the court is aware of no non-parties who would be negatively affected by a discovery stay.[40]  And fifth, "the general public's primary interest in this case is an efficient and just resolution.  Avoiding [potentially] wasteful efforts by the court and the litigants serves that purpose."[41]

In sum, the court concludes a temporary discovery stay will not preclude Plaintiffs' access to a fair trial, will minimize the substantial burden confronting Defendants, and will promote the efficient resolution of this case.  The court finds the facts and circumstances of this case support Defendants' request to stay discovery pending resolution of Defendants' Motions to Dismiss.

---

[39] *See Fuller*, 2023 WL 3589063, at *2 (quoting *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2005)).

[40] *See Motion* at 9.

[41] *Adamson*, 2022 WL 4767573, at *4; *Reply* at 10.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion.[42]  Save for matters specifically addressed in the court's Case Management Order,[43] all case management-related requirements and deadlines applicable to this matter under the Federal Rules of Civil Procedure and Local Rules of Civil Practice for the District of Utah remain stayed until the court resolves Defendants' Motions to Dismiss, or the court orders otherwise.

DATED this 30th day of September 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[42] ECF 68.

[43] ECF 60.